UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § CIVIL ACTION H-10-2812 <br> ROBERT S. MACINTYRE, individually, and § <br> as Temporary Administrator of the § <br> Estate of James Howard Marshall, II, *et al.*, § <br> § <br> *Defendants*. § | |

## ORDER

Pending before the court are defendants' E. Pierce Marshall, Jr., individually, and as Executor of the Estate of Eleanor Pierce Stevens, and Finley T. Hilliard, individually, and as Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust (collectively, the "Stevens Defendants") motions for summary judgment and motion to seal. Dkt. 55. Also before the court is the United States' response and cross-motion for summary judgment on its claims against the Stevens Defendants. Dkt. 57. Upon consideration of the motion, cross-motion and responses, the Stevens Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART, and the United States' motion is also GRANTED IN PART and DENIED IN PART. The Stevens Defendants' motion to seal (Dkt. 55) is DENIED.

## BACKGROUND

The facts pertinent to the question before the court are as follows. As part of her divorce settlement with J. Howard Marshall, II, Eleanor Pierce Stevens owned 47,623 shares of MPI stock. In 1984, Stevens transferred all of her shares to the Eleanor Pierce Stevens Living Trust—an irrevocable trust. During 1988 and 1989, the Living Trust transferred all of the stock into four

separate trusts. The Living Trust transferred 24,825 shares into three Charitable Remainder Annuity Trusts ("CRAT"s). The remaining 22,798 shares were transferred into a Grantor Retained Income Trust ("GRIT"). The GRIT would pay income to the beneficiary, Eleanor Pierce Stevens, for 10 years at which point the trust would terminate and any residue would be distributed to the remainder beneficiary, E. Pierce Marshall. These transfers were accomplished by cancelling the shares and reissuing them in the names of the respective trusts. Finley L. Hilliard was the trustee for the GRIT. In 1989, the three CRATs sold all of their shares in MPI back to MPI.[1] The GRIT did not sell its MPI stock and distributed income to Eleanor Pierce Stevens for 10 years at which point, in 1999, it terminated by its own terms.

In 1995, J. Howard Marshall, II sold MPI stock back to MPI below market value ("the Sale"). Shortly thereafter, J. Howard Marshall, II died. The IRS audited Marshall's 1992 through 1995 gift taxes and issued deficiency notices for those years, including a deficiency for an alleged indirect gift to the remaining shareholders as a result of the Sale. Marshall's Estate challenged the deficiencies. One of the issues contested by Marshall's Estate was the allegation that the 1995 Sale increased the value of the MPI stock held in Stevens's GRIT and therefore constituted a taxable gift. In 2002, the issue was resolved as part of a Stipulation of Settled Issues (the "Stipulation"). The Stipulation assessed the 1995 gift to Stevens at $36,279,417.00. Finally in 2008, the United States Tax Court issued three separate decisions, finding deficiencies in the Marshall Estate's gift taxes for the years 1992 through 1995 (the "Marshall Tax Court Decisions"). The Marshal Tax Court Decisions referenced the Stipulation but contained no findings of fact. The Marshall Estate failed or refused to pay fully the gift taxes assessed for those years.

---

[1] Since there have been no allegations to the contrary, the court assumes that the shares were sold back to MPI for fair market value.

The United States brought suit against the Stevens Estate and its Trustees, among others, to collect the unpaid gift taxes resulting from Marshall's gifts during 1992 through 1995. The United States argues that by operation of law unpaid gift taxes may be assessed against the donee. The United States also argues that as executor of the Stevens Estate, E. Pierce Marshall Jr. and as trustee of the GRIT Finley Hilliard may both be personally liable for the unpaid gift taxes.[2] The Stevens Defendants now move for summary judgment and to seal the exhibits to the motion for summary judgment. The United States filed a cross-motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden

---

[2] The United States has filed a separate motion for summary judgment against Finley Hilliard and E. Pierce Marshall. Dkt. 93.

3

does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id*. "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting former FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory

"bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## ANALYSIS

The parties have filed cross-motions for summary judgment. Since the motions are simply mirror images of the same issue, the court addresses them together. The Stevens Defendants have also filed a motion to seal, which the court addresses separately.

A.   **Cross-Motions for Summary Judgment**

   1.   **Did Stevens Own Stock in MPI at the time of the Sale**

The Stevens Defendants move for summary judgment based on one simple premise—that Stevens did not own any MPI stock at the time of the Sale and, therefore, is not a donee of the gift. With regard to the stock transferred to the three CRATs, the Stevens Defendants are undoubtably correct. The CRATs had already sold their shares of stock back to MPI at the time of the Sale. So, regardless of whether Stevens could be said to be a donee of a gift to a CRAT she established, the CRATs owned no MPI stock at the time of the gift.

As for the MPI stock owned by the GRIT at the time of the Sale, the Stevens Defendants argue that the trust, not Stevens was the donee of the gift and, therefore, liable for any gift taxes. The United States counters that the Stevens Defendants are barred from litigating the fact of the gifts, the identity of the donees, and the amount of the gifts based on the Stipulation and resulting Marshall Tax Court Decisions. Additionally, the United States argues that even if the Stevens Defendants are not precluded from re-litigating the issue, Stevens is still the donor because she held a beneficial interest in the trust's income or property.

2.	**The Effect of the Marshall Tax Court Decisions**

The United States argues that the Stipulation and the Marshall Tax Court Decisions operate to bar the Stevens Defendants from relitigating the fact of the gift, the amount of the gift and the recipient of the gift. It points to the Fifth Circuit's holding in *United States v. Davenport*, 484 F.3d 321 (5th Cir. 2007) for this proposition. The Stevens Defendants counter that *Davenport* is distinguishable on its facts. However, the Stevens Defendants do not contest that the GRIT's ownership interest in MPI increased in 1995 as a result of the Sale. Nor do they argue that the valuation of the MPI interest is incorrect. The Stevens Defendants do, however, object on hearsay grounds to the admission of both the Stipulation and a spreadsheet proffered by the government that indicates the percentages of stock ownership in MPI.

The court overrules the Stevens Defendants' objections to the United States' offer of the spreadsheet because the court did not use the spreadsheet in considering the motion for summary judgment. The spreadsheet was cumulative of other evidence in the record. The objection to the Stipulation is also overruled. The Stipulation is not hearsay regarding the fact of J. Howard Marshall II's tax liability and the amount of that liability based on the Sale. It was a statement made by Marshall's estate's representatives in a different trial where the estate was a party. *See* FED. R. EVID. 801(c). The court need not decide the slightly thornier question whether the statement is hearsay against the Stevens Defendants as to Stevens being the donee of the gift because, as discussed below, under the facts of this case, she would be the donee of the gift absent any Stipulation or the Marshal Tax Court Decisions. Accordingly, both hearsay objections are overruled.

3.	**Is Stevens or the GRIT the donee**

The Stevens Defendants argue that Stevens is not the donee of the gift for tax purposes for two main reasons: (1) remainder beneficiaries, not income beneficiaries, owe gift taxes on monies

6

that enlarge the corpus; and (2) the gift to the trust was not a part of the income Stevens received because Kansas law governs the trust and under Kansas law the definition of income under the trust does not include the corpus, into which the gift would fall.

For the purposes of donee liability for unpaid gift taxes, courts have not addressed how to determine the identity of the donee. However, the Supreme Court has set forth a test for determining whether beneficiaries of a trust are donees eligible for a gift tax exclusion pursuant to 26 U.S.C. § 2503(b). In *Helvering v. Hutchings*, the Supreme "Court established that [a] gift to a trust is, in fact, a gift to the beneficiaries." *Stinson Estate v. United States*, 214 F.3d 846, 848 (7th Cir. 2000) (citing *Helvering v. Hutchings*, 312 U.S. 393, 61 S. Ct. 653 (1941) (allowing an exclusion for each separate beneficiary rather than only one for the trust as a whole)). In two companion cases decided the same day, the Court determined that exclusions applied only to present rather than future interests and defined a present interest as a right to the present enjoyment of the gift. *Id.* (citing *Ryerson v. United States*, 312 U.S. 405, 61 S. Ct. 656 (1941); *United States v. Pelzer*, 312 U.S. 399, 61 S. Ct. 659 (1941)). The court sees no reason why the definition of a donee for a gift tax exclusion should differ from the definition of a donee for the purposes of gift tax liability.

At the time of the Sale, the GRIT owned 22,798 shares of MPI stock. By the terms of the GRIT, Stevens retained the absolute right to distributions of all net income of the trust. Dkt. 55, Ex. 6. Although the trustee had some flexibility regarding exactly when the income was paid to Stevens, all net income had to be distributed every three months. The United States has adduced evidence demonstrating that the Sale had a direct impact on the value of the MPI stock held by the GRIT, which in turn had an impact on the income distributed to Stevens.

The gift taxes should have been paid from the corpus of the trust at the time it became clear that the donor, the Marshall estate, would not pay them. Since, the trust has dissolved by its own

7

terms and been disbursed, the question is whether the responsibility for those taxes should lie with the income beneficiary, who benefitted from the increase in income distributed by the trust, or with the remainder beneficiary to whom the corpus of the trust passed at the time it terminated.

The Stevens Defendants argue that the remainder beneficiary, not the income beneficiary, is the donee of a gift to a trust. The court disagrees. A remainder is a future interest, which is uncertain. The corpus of the trust could be depleted for many reasons prior to distribution of the corpus to the remainderman. In *Ryerson* and *Pelzer*, the Supreme Court expressly held that the donee for the purpose of a gift tax exclusion must hold a present interest in and right of enjoyment of the gift. That rule makes a great deal of sense in the setting of gift tax liability. The tax should be paid from a known present source of money which, by definition, consists of enough funds to pay the taxes. If something happened and the remainder beneficiary received little or no money from the remnants of the trust at the time of its disbursement, then collecting the taxes from the remainder beneficiary would create a hardship on a person who never enjoyed any benefits of the gift itself. Therefore, Stevens, the income beneficiary, was the donee of the gift for gift tax purposes, not E. Pierce Marshall, the remainder beneficiary.

Alternatively, the Stevens Defendants urge the court to look to Kansas law for the definition of income under the trust. They argue that Kansas law would allocate the increase in the value of the MPI stock to the corpus of the trust rather than to the income. The United States counters that Kansas law would only define income and principal for the trust if the trust document itself was ambiguous. And, the trust document clearly defines both income and corpus in a manner that would not prevent the increase in value of the MPI stock from falling under income, at least in part. In this case, the distinction between corpus and income is blurry because Stevens had the absolute right to all income from the GRIT and an increase in income-producing part of the corpus equates to an

8

increase in the income. For this reason and because Stevens meets the *Helvering* test for donee, the court holds that Stevens is the donee of the gift.

**B.     Motion to Seal**

As part of their motion for summary judgment, the Stevens Defendants also move the court to seal the exhibits to the motion for summary judgment. These exhibits were designated confidential pursuant to a protective order submitted by the parties and entered by the court. However, the order provides that a confidential designation may be contested and the United States contests that these documents should be sealed. The documents consist of the trust agreements and stock certificates at issue in this case. Upon review, the court holds that these documents are not the type of documents Rule 26(c) was intended to protect. Accordingly, the motion to seal is DENIED.

## Conclusion

Pending before the court are the Stevens Defendants' motions for summary judgment and motion to seal. Dkt. 55. Also before the court is the United States' response and cross-motion for summary judgment on its claims against the Stevens Defendants. Dkt. 57. Upon consideration of the motion, cross-motion and responses, the Stevens Defendants' motion for summary judgment is GRANTED IN PART as it relates to the 24, 825 shares of MPI stock transferred to the three CRATs and DENIED IN PART as to all other respects, and the United States' motion is likewise GRANTED IN PART and DENIED IN PART. The Stevens Defendants' motion to seal (Dkt. 55) is DENIED.

Signed at Houston, Texas on March 28, 2012.

_____
Gray H. Miller
United States District Judge