# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION H-10-2812 |
| ROBERT S. MACINTYRE, Individually, and as | § | |
| Temporary Administrator of the Estate of | § | |
| James Howard Marshall II, *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

## ORDER

Pending before the court are the United States of America's motion for summary judgment against E. Pierce Marshall, Jr. and Finley Hilliard, individually (Dkt. 93), Defendants E. Pierce Marshall, Jr. as Executor of the Estate of Eleanor Pierce Stevens and individually, and Finley Hilliard, as Trustee of the Eleanor Pierce (Marshall) Stevens Living Trust and individually's motion for certification (Dkt. 103), and the United States of America's motion for clarification (Dkt. 104). Upon consideration of the motions, responses, replies—if any, and the applicable law, the motion for clarification (Dkt. 104) is GRANTED, the motion for certification (Dkt. 103) is DENIED AS MOOT, and the government's motion for summary judgment (Dkt. 93) is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

In 1995, J. Howard Marshall, II made an indirect gift to certain members of his family. He died shortly thereafter. The IRS assessed gift taxes against Marshall's Estate, which the Estate challenged in the United States Tax Court. As part of a 2002 Stipulation of Settled Issues, the Tax Court entered judgment which, among other things, set the amount of the Gift to the Eleanor Pierce

Stevens' Grantor Retained Income Trust ("GRIT") at $35,939,316.00 (the "Gift"). The Marshall Estate never paid the tax on the Gift. By operation of law, liability for the donor's unpaid gift tax shifted to the donee, Eleanor Pierce Stevens ("Stevens").[1]

In April of 2007, Stevens died. E. Pierce Marshall, Jr. ("Marshall") became the sole Executor of her Estate. Finley L. Hilliard ("Hilliard") was the Trustee for the Eleanor Pierce (Marshall) Stevens Living Trust (the "Trust"). Shortly after Stevens's death, Marshall was informed that the IRS might assert donee liability against Stevens's Estate because the Marshall Estate had failed to pay gift taxes on the Gift. Marshall mentioned this fact in an email to his brother in August of 2008. Marshall, in his capacity as Executor, made distributions from Stevens's Estate of personal property and proceeds from the sale of Stevens' car in the aggregate amount of $14,791.00. Additionally he caused the Trust to pay $4,872.00 per month rent on Stevens' vacant apartment for 12 months, totaling $58,464.00.

At the same time, Hillard was the Trustee of the Trust. The Trust, by its terms, was liable for all Stevens's debts, taxes and expenses directly due or occasioned by Stevens's death. As early as 2002, Hilliard was aware that the Trust might be liable for the unpaid gift taxes on the Gift. However, Hilliard used Trust funds to pay $29,300.01 to Hilliard & Hilliard for accounting services, and $7,952.00 in legal fees to Hunter & Blazier for charitable organizations other than the Trust and the Stevens Estate. Finally, the Trust and the Estate filed joint federal income tax returns. Marshall and Hilliard claimed offsets for charitable deductions for the periods ending March 2008, March 2010, and March 2011 in the aggregate amount of $1,119,127.00 for money permanently set aside pursuant to 26 U.S.C. § 642(c). These funds have not been distributed to any charities, nor

---

[1] For a full recitation of the facts and reasoning behind this holding, please reference the court's order on summary judgment, dated March 28, 2102. Dkt. 100.

segregated in a separate account.  Instead they are earmarked for charity and, therefore, according to Marshall and Hilliard, unavailable to pay any part of the gift tax.

The government brings claims against both Marshall and Hilliard for personal liability pursuant to 31 U.S.C. § 3713, know as the Federal Priority Statute, for distributions from the Estate and the Trust to lower priority creditors and for failure to preserve sufficient funds to pay Stevens's liability for gift tax on the Gift.  Additionally, it brings a claim of breach of state law fiduciary duties against Marshall for the same actions.  Now, the government has moved for summary judgment on its claims.

### Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material

3

fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to a summary judgment, and no defense to the motion is required. *Id* . "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting former FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

4

ANALYSIS

**I.     The Government's Motion for Summary Judgement (Dkt. 93).**

**A.     The Federal Priority Statute**

The Federal Priority Statute, 31 U.S.C. § 3713, provides that "[a] claim of the United States Government shall be paid first when . . . the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor."  31 U.S.C. § 3713(a)(1)(B). It further provides that "[a] representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government."  § 3713(b).  "The burden lies with those who argue that the government's priority does not apply to show that they are not within the provisions of section 3713."  *United States v. Cole*, 733 F.2d 651, 654 (9th Cir. 1984) (citing *Bramwell v. United States Fidelity Co.*, 269 U.S. 483, 487, 46 S. Ct. 176 (1926)).

The Tax Court has articulated the elements of § 3713 liability as (1) a fiduciary; (2) distributed the estate's assets before paying a claim of the United State and (3) knew or should have known of the United States' claim.  *Huddleston v. Comm'r*, T.C. Memo. 1994-131, 1994 WL 100520 at *6 (U.S. Tax Ct. 1994); *see also Leigh v. Comm'r*, 72 T.C. 1105, 1110 (U.S. Tax Ct. 1979).  "[I]n order to render a fiduciary personally liable under 31 U.S.C. [§ 3713], he must first be chargeable with knowledge or notice of the debt due to the United States . . . ."  *Leigh*, 72 T.C. at 1109 (construing a virtually identical earlier version of the statute).  "The knowledge requirement . . . may be satisfied by either actual knowledge of the liability or notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the unpaid claim of the United States."  *Id.* at 1110.

5

An executor of an estate may be a fiduciary for the purposes of § 3713. *Schwartz v. Comm'r*, 560 F.2d 311, 315 (8th Cir. 1977). And a trustee is the paradigmatic example of a fiduciary. *See* BLACK'S LAW DICTIONARY 1656 (9th ed. 2009) (defining trustee as "[o]ne who stands in a fiduciary or confidential relationship to another"). Marshall is a fiduciary for the purposes of § 3713 based on his role as Executor of Stevens's Estate. And, because Stevens's Trust directed that the Trust should pay any debts due or occasioned by Stevens's death, the Trustee, Hilliard, is also a fiduciary under the statute. Therefore, they meet the first prong. And, the parties do not dispute that Marshall and Hilliard made the distributions at issue or that the amount owed to the IRS is currently unpaid. Thus, they meet the second prong as well.

However, Marshall and Hilliard argue that they did not have knowledge of the claim because (1) state of mind is generally a jury question; (2) Hilliard had no knowledge of the 2002 Stipulation; (3) although Hilliard was told that the IRS might assert donee liability against Stevens, he did not believe it to be possible; and (3) Marshall believed that the Stipulation was not binding on Stevens because he received legal advice to that effect. The government counters that Marshall and Hilliard misapprehend the questions when they argue that they had no knowledge because they believed that Stevens did not have any liability for the gift taxes on the Gift. The court agrees.

As explained above, the knowledge requirement is not actual knowledge. *Leigh*, 72 T.C. at 1110. It is sufficient to show that the fiduciary had "notice of such facts as would put a reasonably prudent person on inquiry as to the existence of the unpaid claim." *Id.* Neither Marshall nor Hilliard contend that they were never told that the IRS might try to make a claim against Stevens for the unpaid gift taxes on the Gift. In fact, they admit that they were both told that the IRS might try to assert a claim against Stevens's Estate for donee liability on the Gift. Instead they argue that they did not believe the IRS's claim against Stevens was valid for various reasons. But, as the

government points out, Marshall and Hilliard's belief in the validity of the government's claim is not the test.  Marshall and Hilliard had sufficient notice of the claim to put a reasonably prudent person on notice.  It is regrettable that they received incorrect advice on that point, but poor legal advice is not a defense.  Despite their belief that the government's claim was not valid, Marshall and Hilliard were required by § 3713 to preserve the funds to pay the government's claim—should it be proved valid.  Accordingly, Marshall and Hilliard both meet the test for individual liability under § 3713 and are therefore personally liable for distributions made from Stevens's Estate and Trust.

###     B.      The Distributions

Section 3713's reach is broad, *United States v. Moore*, 423 U.S. 77, 82–83, 96 S. Ct. 310 (1975), but not absolute, *Abrams v. United States*, 274 F.2d 8, 12 (8th Cir. 1960).  Some courts have held that the government has priority over debts of the decedent but not debts of the estate.  *See Estate of Johnson*, 836 F.2d 940, 946 n.14 (5th Cir. 1988) (declining to reach the question but collecting cases); *In re Estate of Funk*, 849 N.E.2d 366, 373 (Ill. 2006) (holding that funeral expenses and expenses of administration of the estate are debts of the estate and not subject to § 3713's priority requirement); *United States v. Weisburn*, 48 F.Supp. 393, 396–97 (E.D. Penn.1943) (according priority to federal tax claims "except as to payment which [executrix] made for administrative expenses, for funeral expenses, and for the headstone."); *Martin v. Dennett*, 626 P.2d 473, 475-76 (Utah 1981) (concluding that while 31 U.S.C. § 3713 accords priority to federal tax claims over the debts of the debtor, it does not accord a similar priority over debts of the estate, including administrative and funeral expenses); *In re Igoe*, 86-1 U.S. Tax. Cas. (CCH) ¶ 9363 (Mo.App.1986) (IRS tax lien did not have priority over family and homestead allowances under Missouri state law).

Texas law defines which claims are claims against the estate versus claims against the decedent in § 322 of the Texas Probate Code. *See Bailey v. Cherokee County Appraisal Dist.*, 862 S.W. 2d 581, 583 (Tex. 1993). Under the Code, Class 1 and 2 claims are debts of the estate. They include:

> Class 1. Funeral expenses and expenses of last sickness for a reasonable amount to be approved by the court, not to exceed a total of Fifteen Thousand Dollars, with any excess to be classified and paid as other unsecured claims.

> Class 2. Expenses of administration and expenses incurred in the preservation, safekeeping, and management of the estate, including fees and expenses awarded under Section 243 of this code, and unpaid expenses of administration awarded in a guardianship of the decedent.

TEX. PROB. CODE § 322. Class 3 claims begin the debts of the decedent with "[s]ecured claims for money." *Id.* At this point, § 3713 comes in to play for estates without sufficient funds to satisfy the claim(s) of the government and takes priority over any debts of the decedent. Therefore, those distributions made by the Defendants that can fairly be characterized as debts of the estate would not trigger individual liability on the part of Marshall and Hilliard.

### 1. Distribution of Stevens's Personal Property

The United States alleges, and Marshall does not deny, that Marshall distributed Stevens's personal property, including the proceeds from the sale of her car, to himself and his brothers as Stevens's heirs. Marshall argues that the cost of storing the personal items would violate his duty to "take care of the property of the estate . . . as a prudent man would take care of his own property." *See* TEX. PROB. CODE § 230. If he stored these items, then the estate would have had to pay the cost of storage, amounting to more than the items were worth. The court disagrees. First, the proceeds from the sale of Stevens's car did not require storage. They could have been held in the Estate's account. Second, there is no indication that the personal property distributed by Marshall was

somehow exempt under the Texas Probate Code.  *See id.* at §§ 271, 278.  Therefore, those items should have been kept available to pay the debts of the decedent.  The items could have been sold—perhaps to family members as in the case of the car—and the proceeds put into the estate for the satisfaction of Stevens's debts.  Accordingly, Marshall is individually liable for the value ($14,091) of the personal property he distributed.

### 2.      Rent on Stevens's Apartment

Marshall also caused the Living Trust to pay rent on Stevens's apartment, totaling $43,848. He argues that he paid the rent in order to accommodate the complicated schedules of the family who wished to hold a Quaker-style memorial service in Stevens's home.  While the government agrees that some amount of time to arrange the service would be acceptable, it argues that keeping the apartment for almost a year went far beyond that point.  The Texas Probate Code allows a maximum of $15,000 for funeral expenses and last illness expenses to be classified as Class 1 expenses—expenses of the estate.  § 322.  Accordingly, Marshall is personally liable for $28,848.00, representing distributions in excess of that amount.

### 3.      Accounting and Legal Services

The government argues that Hilliard is individually liable for accounting and legal services paid out of the Living Trust on behalf of charitable entities other than the Living Trust and the Estate.  Under Texas law, accounting and attorneys' fees may be classified as Class 2 expenses, and thus expenses of the estate, if they were "incurred in the preservation, safekeeping, and management of the estate."  § 322; *Hope v. Baumgartner*, 111 S.W.3d 775, 778 (Tex.App.-Fort Worth 2003, no pet.).  However, the Trust's payment of these expenses for other entities does not act to preserve the Estate—rather the opposite.  In fact, the reason Hilliard gave for paying these expenses out of the Trust instead from the funds of the charitable entities themselves was that Stevens had instructed him

9

to do so in order to preserve the funds of the charitable organizations for charity. Accordingly, these payments were a burden on the Estate and not Class 2 expenses of the Estate. Therefore, the government's priority operated against these payments and Hilliard is personally liable pursuant to 31 U.S.C. § 3713 for $37,252.

### 4.     Charitable Set-off

Section 642(c) of the Tax Code allows estates and trusts to claim income tax deductions for amounts permanently set aside to be paid to charitable organizations for charitable purposes provided the trust instrument or will sufficiently mandates that trust or estate income be set aside for that purpose. 26 U.S.C. § 642(c); 9 MERTENS LAW OF FEDERAL INCOME TAXATION § 36:80 (2012). "No act of physical segregation is required to be made between funds set aside for charitable purposes and other funds." MERTEN at § 36:80. And the trust or will does not have to identify the amount to be set aside.

For the periods ending March 2008, March 2010, and March 2011, Marshall and Hilliard set aside money, totaling $1,119,127 in the Trust for charitable purposes and claimed charitable deductions on the Estate and Trust's joint income tax returns. Those funds have not been paid to any charity and they remain in the same account with the Trust's other funds. The government does not ask this court whether the Trust properly or improperly set aside those funds. Instead, it asks whether, once those funds were set aside, may the government access them to pay the transferee liability. The court did not find and the parties cite no law discussing whether a set aside can be accessed for other purposes. This may be because the language of the statute is actually quite clear. The amount is *permanently* set aside. § 642(c). The word permanent is defined as "continuing or enduring without fundamental or marked change." WEBSTER'S NEW COLLEGIATE DICTIONARY 854

(1977).  Therefore, those amounts, although still existing in the Trust's accounts, are not available to the government to satisfy Stevens' donee liability.

This may be a pyrrhic victory for Marshall and Hilliard however.  Because, having put these funds beyond the reach of the government, they become individually liable for doing so.  A charitable set aside can in no way be considered an expense of the estate.  Therefore, the government's priority applies to these funds as well.  As discussed above, Marshall and Hilliard meet the test for individual liability pursuant to 31 U.S.C. § 3713.  Accordingly, they are jointly liable to the government for $1,119,127 in funds they permanently set aside.

### C.    Breach of Fiduciary Duty

The government argues that Marshall, as Executor of Stevens Estate, breached his fiduciary duty to pay the taxes due the IRS on the estate in the order and manner they were due.  In effect, it urges that Marshall's breach is coterminous with his personal liability under § 3713.  The court agrees. Insofar as the court held above that Marshall was individually liable to the government pursuant to § 3713, he has also breached his fiduciary duty as an Executor under state law.  *See In re Tomlin*, 266 B.R. 350, 354 (N.D. Tex. 2001).

## II.    The Government's Motion for Clarification

The government and the Stevens Defendants disagree regarding the court's holding in its order on summary judgment regarding the Stevens Defendants' donee liability.  The government has moved for clarification, and the motion is GRANTED.  In its order on summary judgment, issued March 28, 2012 (Dkt. 100), the court held the following:

1.    Stevens personally, as income beneficiary of the GRIT, was the donee of the indirect gift from J. Howard Marshall, II.

2.    The amount of the gift, was determined by the Tax Court based on the 2002 Stipulation.  It is $35,939,316.00.

11

      3.      Therefore, Stevens, or more properly Stevens's Estate, owes the government gift taxes on $35,939,316.00 as the donee of the gift.

The court does not repeat any of the facts or reasoning here, but refers the parties to its order of March 28, 2012. *See* Dkt. 100.

## III.    Stevens Defendants' Motion for Certification and Stay

The Stevens Defendants move the court to certify the questions resolved by this court in its March 28, 2012 order on summary judgment. Since, the present order effectively deals with the last remaining issues in the case, interlocutory appeal is unnecessary. Accordingly, the motion is DENIED AS MOOT.

### CONCLUSION

Based on the foregoing, the government's motion for clarification (Dkt. 103) is GRANTED as detailed above, the defendants' motion for certification (Dkt. 104) is DENIED AS MOOT, and the government's motion for summary judgment against Marshall and Hilliard individually (Dkt. 93) is GRANTED IN PART and DENIED IN PART. Judgment is entered for the government as follows:

E. Pierce Marshall is individually liable to the government for $42,939 pursuant to 31 U.S.C. § 3713 for distributions of Stevens's personal effects and payments of funeral expenses in excess of the maximum allowed under Texas law.

Finley Hilliard is personally liable to the government in the amount of $37,252.00 for accounting and legal services paid from the Trust for other charitable organizations in violation of the government's priority pursuant to 31 U.S.C. § 3713.

And, E. Pierce Marshall and Finley Hilliard are jointly liable to the government for $1,119,127 for Trust funds permanently set aside pursuant to 26 U.S.C. § 642(c) in violation of the government's priority pursuant to 31 U.S.C. § 3713.

It is so ORDERED.

Signed at Houston, Texas on June 25, 2012.

_____
Gray H. Miller
United States District Judge